# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SHAWN LEWIS WHITE,

    *Petitioner*,

vs.

JO GENTRY, *et al.*,

    *Respondents.*

2:17-cv-02216-JCM-NJK

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the court on a pending show-cause inquiry as to whether the petition is subject to dismissal as time-barred under 28 U.S.C. § 2244(d). This order follows upon the court's earlier show-cause order (ECF No. 5) petitioner's response thereto (ECF No. 8), and a record supplement (ECF No. 14) filed by respondents in response to the court's order.

## *Background*

Petitioner Shawn Lewis White challenges two Nevada state judgments of conviction entered pursuant to a guilty plea in each case, in Nos. C208788 and C210008 in the state district court.[1]

---

[1] The federal petition in this matter identifies only the judgment in No. C21008 as the judgment of conviction being challenged in response to the pertinent inquiry on the petition form. (ECF No. 1-1, at 2.) Petitioner's claims and arguments, however, are directed at the very least primarily to his conviction for second-degree murder instead in No. 208788. The court has construed the *pro se* petition as potentially
(continued...)

In his show-cause response, petitioner seeks to overcome the untimeliness of his petition, as to all claims presented, based on, *inter alia*, an allegation that he is actually innocent of the second-degree murder of which he was convicted in No. C208788. The court therefore briefly summarizes the charges, capital sentencing exposure, and evidence that petitioner faced at the time of his pleas on the same day in the two cases.

In No. C210008, White and his co-defendant Charles Walker were charged with four counts of conspiracy to commit robbery, four counts of burglary while in possession of a firearm, and five counts of robbery with the use of a deadly weapon. These charges involved armed robberies committed on the same day on January 9, 2005 at three different 7-Eleven stores and an armed robbery committed on January 15, 2005, at a Jack in the Box restaurant, all in the central part of the Las Vegas valley. (ECF No. 14-7; Exhibit 7.)[2]

At the preliminary hearing in No. C210008, the prosecution presented evidence tending to establish the following.[3] In two of the 7-Eleven robberies, White would ask to buy a $50.00 phone card and tendered money for the purchase, Walker would display a handgun after the store clerk had rung up the sale and had the cash register open to make change, and White would jump over the counter and remove cash from the register. (ECF No. 14-13, at 2-13 & 24-30; Exhibit 13, at 5-46 & 92-116.) The other 7-Eleven robbery differed substantially only

---

[1](...continued)
challenging the judgments of conviction in both cases. Rule 2(e) of the Rules Governing Section 2254 Cases permits a petitioner to challenge more than one conviction arising from the same court within a single federal habeas petition.

[2]Walker additionally was charged with: (a) a firearm discharge offense and assault with a deadly weapon in connection with the Jack in the Box robbery; and (b) burglary while in possession of a firearm and robbery with the use of a deadly weapon in connection with a January 20, 2005, armed robbery of a Grumpy's Convenience Store also in the central Las Vegas valley.

[3]The court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The court summarizes same solely as background to the issues presented in this case, and it does not summarize all such material. No assertion of fact made in describing statements, testimony or other evidence in the state court constitutes a finding by this court. Any absence of mention of a specific piece of evidence or category of evidence in this overview does not signify that the court has overlooked the evidence in considering petitioner's claims. The court further provides parallel cites to the underlying exhibit pages in the event that petitioner's copy of the exhibits does not include the electronically-generated CM/ECF header page numbers.

1 in that Walker instead initiated the fake purchase and then Walker displayed the weapon and
2 White jumped over the counter before making the clerk open the register. (ECF No. 14-13,
3 at 13-24; Exhibit 13, at 47-91.) The Jack in the Box robbery followed a somewhat similar
4 pattern inside the business with Walker initiating a purchase, displaying a handgun once the
5 register was open, and then reaching over the counter to take cash from the register. For this
6 location, White remained outside the restaurant during the robbery, with the prosecution
7 maintaining that he was acting as a lookout. (ECF No. 14-13, at 30-39 & 43; Exhibit 13, at
8 116-52 & 168.) All of the offenses involved Walker displaying a handgun during a robbery
9 in which White also allegedly participated to one extent or another.

In No. C208788, White and Walker were charged with two counts of conspiracy to commit burglary, two counts of conspiracy to commit robbery, two counts of burglary while in possession of a firearm, two counts of robbery with the use of a deadly weapon, and one count of murder with the use of a deadly weapon. These charges involved armed robberies committed on the same day on January 21, 2005 – subsequent to the multiple armed robberies involved in No. 210008 – at two different McDonald's restaurants in the central part of the Las Vegas valley. Joint culpability was alleged on the murder charge based upon premeditation and deliberation, aider and abettor liability, coconspirator liability, and the felony murder doctrine based upon the murder having been committed in the perpetration or attempted perpetration of a robbery. (ECF No. 14-8; Exhibit 8.)[4]

At the preliminary hearing in No. C208788, the prosecution presented evidence tending to establish the following.

The robberies followed a pattern very similar to the earlier 7-Eleven robberies.

At a McDonald's at 3815 South Maryland Parkway, White and Walker placed food orders at the counter. When the crew member rang up the orders and the register opened, Walker displayed a handgun; and White jumped the counter and took cash from the register. (ECF No. 14-9, at 7-60; Exhibit 9, at 6-59.)

---

[4]Walker additionally was charged with carrying a concealed firearm, a Smith & Wesson revolver.

-3-

At another McDonald's near by at 3700 Paradise Road, White and Walker followed the same pattern. When a crew member rang up Walker's order and the register opened, Walker displayed a handgun; and White jumped the counter and took cash from the register. (ECF No. 14-9, at 62-79; Exhibit 9, at 61-78.)

David Cross testified as follows as to the circumstances of the murder at the McDonald's at 3700 Paradise Road. Cross and Tom Latimer were in town for a convention being held at the nearby convention center. They were having a late lunch at the McDonald's when they heard a scream at the counter. They looked over and saw the above-described robbery in progress. (ECF No. 14-9, at 80-84 & 96-97; Exhibit 9, at 79-83 & 95-96.)

Cross further testified, *inter alia*, that: (1) Walker started to leave first; (2) White then "was still reaching as if to reach in the [cash register] drawers or had his hand by the drawer; (3) when Walker had "left or had gotten to the door," White "started to move and Mr. Latimer came around me and proceeded to go after him;" (4) White exited through the glass door, and Latimer went through the door after him; (5) at the point that Cross reached the door, "they already had hands on each other . . . by the passenger side of a gray car" in the McDonald's parking lot; (6) as Cross stepped through the door, "there was a punch thrown by Mr. Latimer and also one by Mr. White:" (7) Walker, who had been inside the vehicle on the driver's side "arose out of the car with one foot on the ground and I believe he had one still on the floor board area;" (7) "as he was rising up Mr. Latimer and Mr. White separated for whatever reason whether it was pushed apart, I don't know why, they were no longer in contact with each other, then Mr. Walker fired two shots at Mr. Latimer;" (8) Latimer, who had turned toward Walker before the shots, turned around and dropped to the ground; (9) White thereupon "entered the vehicle on the passenger side;" and (10) Walker "entered the driver's side and then proceeded to drive off." (ECF No. 14-9, at 85-91, 93-96 & 97-107; Exhibit 9, at 84-90, 92-95 & 96-106.)

The vehicle had been parked in "a handicapped spot directly out at an angle to the door." Cross believed that the car was running at the time, as he did not remember any sound of it starting before the vehicle "just took off." The entire confrontation after Latimer

chased White and engaged him outside the door in the McDonald's parking lot on the way to the vehicle "probably lasted all of about ten seconds." (ECF No. 14-9, at 92-93 & 98; Exhibit 9, at 91-92 & 97.)

Cross got the license plate number on the vehicle, and White and Walker were apprehended a short time later. Cross identified them in a show-up a short distance away only about fifteen or twenty minutes after the robbery and murder. (ECF No. 14-9, at 88-89; Exhibit 9, at 87-88.)

Stipulations were entered for purposes of the preliminary hearing that Latimer "died as a result of multiple gunshot wounds and the manner of death was homicide" and further that a Smith & Wesson revolver was recovered from Walker when he was apprehended. (ECF No. 14-9, at 60-61 & 107; Exhibit 9, at 59-60 & 106.)

Following the preliminary hearing in No. C208788, the state gave notice of its intent to seek the death penalty. White's motion to strike the notice of intent to seek the death penalty was denied following an April 25, 2005, hearing and written order on May 2, 2005. (ECF Nos. 10, 11, 14, 15 & 16; Exhibits 10, 11, 14, 15 & 16.)

While thus facing possible imposition of the death penalty following a full trial in No. C208788, White entered guilty pleas in the two cases a little over three months later on August 11, 2005.

In No. C210008, with regard to the three 7-Eleven robberies, White pled guilty to three counts of conspiracy to commit robbery and three counts of robbery with the use of a deadly weapon. (ECF Nos. 14-17 & 14-20; Exhibits 17 & 20.)

In No. C208788, with regard to the two McDonald's robberies and murder, White pled guilty to two counts of conspiracy to commit robbery, two counts of robbery with the use of a deadly weapon, and one count of second-degree murder. (ECF Nos. 14-18, 14-19 & 14-20; Exhibits 18, 19 & 20.) In the plea colloquy, it was specifically acknowledged that White was pleading guilty to second-degree murder to avoid potentially more severe sentencing exposure, including possibly death, on a possible conviction for first-degree murder with the use of a deadly weapon. (ECF No. 14-20, at 7-9; Exhibit 20, at 24-26 & 31.)

Judgment in both cases was entered on the same day, November 30, 2005, in Nos. C208788 and C210008 in the state district court. On the second-degree murder conviction in particular, White was sentenced to life with eligibility for consideration for parole after serving 10 years. (ECF Nos. 14-24 & 14-25; Exhibits 24 & 25.)

On May 26, 2006, the state supreme court affirmed the convictions in both cases, in a consolidated appeal in Nos. 46518 and 46521 in that court.[5]

The ninety-day time period to file a *certiorari* petition expired on August 24, 2006.

Petitioner filed a state post-conviction petition in both cases on August 3, 2006, before the *certiorari* time expired.

The state district court clerk mailed a notice of entry of decision and order denying the petition in No. C210008 on November 7, 2006. Petitioner did not appeal the denial of the petition; and the time to do so expired on Monday, December 11, 2006.

The state district court clerk mailed a notice of entry of decision and order denying the petition in No. C208788 on November 22, 2006. Petitioner did not appeal the denial of the petition; and the thirty-three-day time period to do so expired on December 26, 2006, following the holiday.

Years thereafter, on June 7, 2010, and May 4, 2016, petitioner filed state post-conviction petitions in both cases on each date. These petitions all were denied as, *inter alia*, untimely; and the state appellate courts affirmed also on, *inter alia*, that basis, in Nos. 57179 and 71593 in those courts as to No. C208788 and Nos. 57220 and 71115 as to No. C210008.

Petitioner's remaining proceedings in the state courts additionally have no material impact upon the federal timeliness analysis. Petitioner filed an original petition pertaining to both No. C208788 and No. C210008 in the state supreme court, but it was pending only from

---

[5]In addition to the materials on file and/or available via online legal research, the court took judicial notice in the show-cause order (ECF No. 5, at 1 n.1) of the online docket records of the state district court and state appellate courts. *E.g., Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). The prior state and federal procedural history has not been contested herein. The online docket records of the state courts may be accessed from: https://www.clarkcountycourts.us/Anonymous/default.aspx and https://nvcourts.gov/Supreme/.

November 22, 2010, through January 3, 2011, in No. 57212 in that court. His only other proceedings in the state supreme court as to either case were concluded before the federal limitation period would have begun running in December 2006, under Nos. 45226, 47805, and 47807 in that court. He filed no other potentially tolling proceedings in the state district court in either case.

There have been no intervening amended or corrected judgments of conviction filed in the state district court in either case.

Petitioner previously filed a federal habeas petition challenging both judgments of conviction in No. 3:11-cv-00015-LRH-RAM in this court on or about January 6, 2011. That action was dismissed without prejudice on June 8, 2011, after petitioner failed to respond to a court order that he file a signed pleading stating a claim upon which relief could be granted. Petitioner did not appeal.[6]

The petition in the present action was mailed for filing on or about August 16, 2017.

## *Discussion*

### *Base Calculation of the Federal Limitation Period*

Under 28 U.S.C. § 2244(d)(1)(A), the federal one-year limitation period, unless otherwise tolled or subject to delayed accrual, begins running after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such direct review."

In the present case, the judgment of conviction in both cases became final after the time to file a *certiorari* petition expired on August 24, 2006.

However, a properly filed state post-conviction or other proceeding for collateral review statutorily tolls the running of the federal limitation period under 28 U.S.C. § 2244(d)(2). Petitioner's timely August 3, 2006, state petitions were filed before the time to seek *certiorari* review expired. Those petitions statutorily tolled the limitation period continuously through the

---

[6]The court has not construed the dismissal in the prior federal action as one that would render the present petition a successive petition under 28 U.S.C. § 2244(b).

expiration of the time to appeal the denial of the petitions – respectively through December 11, 2006, as to No. C210008 and through December 26, 2006, as to No. C208788.

Accordingly, absent a basis for other tolling or delayed accrual, the federal limitation period expired one year later as to each conviction – respectively on December 11, 2007, as to No. C210008 and December 26, 2007, as to No. C208788.

None of petitioner's later state court filings could operate to statutorily toll the federal limitation period if it already had expired. Further, an untimely state petition is not "properly filed" for purposes of § 2244(d)(2); and petitioner's untimely state petitions thus could not statutorily toll the federal limitation period in any event. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).[7]

Accordingly, absent a basis for other tolling or delayed accrual, the limitation period putatively expired on December 11, 2007, as to No. C210008 and December 26, 2007, as to No. C208788. The federal petition in this matter was not constructively filed until on or about August 16, 2017, more than nine years after the federal limitation period had expired as to each judgment of conviction.

### *Equitable Tolling and Delayed Accrual*

Equitable tolling is appropriate only if the petitioner can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing.

---

[7]The prior pendency of the federal petition in No. 11-cv-00015 also has no bearing on the timeliness of the present petition. *See Duncan v. Walker*, 533 U.S.167 (2001).

*E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

White maintains that he is ignorant of the law and that he was denied effective access to the courts because the Ely State Prison allowed inmates to access prison law library resources only through a "paging system" rather than via direct physical access to the library.[8] Under a paging system, inmates must request legal materials through "kites," *i.e.*, through the prison messaging system; and inmates in most units do not have access to an inmate law clerk other than indirectly through such kites.

Under established law, a petitioner's lay status, confusion, or ignorance of the law does not establish extraordinary circumstances establishing a basis for equitable tolling of the federal limitation period. *See, e.g., Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013 n.4 (9th Cir. 2009).

The fact that Ely State Prison has for several years used a paging system for legal resource access also does not establish a viable basis for equitable tolling standing alone and certainly not over a nine year period. This court has rejected the proposition that the fact that a prison uses a paging system for law library access in and of itself categorically provides a basis for equitable tolling of the federal limitation period. *See, e.g., Felix v. McDaniel*, 2012

---

[8] The show-cause order outlined for petitioner the applicable law pertaining to statutory tolling, equitable tolling, and delayed accrual of the federal limitation period. (*See* ECF No. 5, at 3-5.) Petitioner nonetheless presents argument pertaining instead to unrelated issues that are not currently before the court, such as argument seeking to establish cause and prejudice to overcome a procedural bar applied in the state courts and argument seeking to establish good cause for a failure to exhaust state remedies in support of a motion to stay. Those legal arguments have no relevance to the issue currently before the court, which is whether petitioner can overcome the untimeliness of the federal petition under 28 U.S.C. § 2244(d) under the law applicable to *that* issue. That law was outlined for petitioner in the show-cause order. The court has construed petitioner's *pro se* response liberally and addressed his underlying factual assertions, such as ignorance of or confusion as to the law, under the applicable legal standards.

In this vein, petitioner urges that the state procedural bars applied to his claims did not constitute independent and adequate state law grounds for purposes of the federal procedural default doctrine. The court did not direct petitioner to show cause why individual claims should not be dismissed as procedurally defaulted due to the application of state law procedural bars, including the state limitations period. The court instead directed petitioner to show cause why the federal petition should not be dismissed because the petition is untimely under the one-year federal limitation period in 28 U.S.C. § 2244(d). On that issue, a final state appellate court holding that a state petition was untimely under Nevada state law is "the end of the matter for purposes of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 4 (2007); *Pace*, 544 U.S. at 413-14.

-9-

1  WL 666742, No. 3:09-cv-00483-LRH-WGC, at *5-*9 (D. Nev., Feb. 29, 2012)(extensively discussing prior case law). Nothing in petitioner's response establishes that the particular paging system in place during the relevant time period constituted an extraordinary circumstance that stood in his way and prevented him from filing a timely federal petition for over a nine year period. Petitioners in Nevada prisons with paging system law library access, including inmates at Ely, can and do file timely federal petitions in this court.

Petitioner further suggests that he had no knowledge that the theory of vicarious liability for murder as a coconspirator or aider and abettor allegedly applied in his case was unsound. He maintains that he therefore had no way to develop the evidentiary basis for his ineffective-assistance claim based upon counsel's allegedly inadequate advice in this regard. (*See* ECF No. 8, at 8 & 14.)

This argument provides a basis for neither equitable tolling nor delayed accrual of the federal limitation period. The argument is grounded in ignorance of the law, specifically of the cases upon which White now relies; and, as discussed above, ignorance of the law does not provide a viable basis for equitable tolling. With respect to delayed accrual, 28 U.S.C. § 2244(d)(1)(D), provides that the federal limitation period potentially can run from "the date on which the federal predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The factual predicate for petitioner's claim in this regard is what counsel said to him at the time of his plea. Petitioner was aware of what counsel said to him at the time of his plea at that time. His ignorance of the *legal arguments* upon which he now relies to challenge the correctness of what was said to him by counsel in 2005 does not provide a basis for delayed accrual under § 2244(d)(1)(D).

Petitioner advances no other arguments that would pertain to either tolling or delayed accrual of the federal limitation period.

***Alleged Actual Innocence***

Petitioner alleges that he is actually innocent of second-degree murder because he could not be vicariously liable for Walker's murder of Tom Latimer as either a coconspirator or aider and abettor, pursuant to the standards set forth in *Bolden v. State*, 121 Nev. 908, 124

-10-

P.3d 191 (2005), and *Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (9th Cir. 2002). White maintains that he could not be vicariously liable for the murder of Latimer because the evidence presented did not reflect that he specifically intended for Walker to kill Latimer.[9]

To avoid application of the federal one-year limitation period based upon a claim of actual innocence, a petitioner must come forward with new reliable evidence tending to establish actual factual innocence, *i.e.*, tending to establish that no reasonable juror would have found him guilty beyond a reasonable doubt. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013); *House v. Bell*, 547 U.S. 518 (2006); *Bousley v. United States*, 523 U.S. 614 (1998); *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011)(*en banc*). In this regard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

At the very outset, on the argument presented, which goes to White's alleged actual innocence only of the second-degree murder charge, petitioner cannot overcome the untimeliness of any claims seeking to overturn his conviction on his other charges. Under established law, a petitioner's showing of actual innocence cannot overcome a procedural bar "for more than the counts as to which he has shown actual innocence." *Vosgien v. Persson*, 742 F.3d 1131, 1136-37 (9th Cir. 2014).

Accordingly, on the arguments and showing made, and without the necessity for any further discussion, it is clear that to the extent that petitioner seeks to challenge his conviction on multiple counts of conspiracy to commit robbery and robbery with the use of a deadly weapon in No. C210008 and No. C208788, his claims are time-barred. That is, regardless of the outcome on petitioner's actual-innocence argument in these proceedings with respect to his second-degree murder conviction, his conviction on the remaining charges of conspiracy to commit robbery and robbery with the use of a deadly weapon cannot be challenged herein. *Vosgien, supra*.

With regard to the second-degree murder conviction, petitioner's legal arguments do not establish that he is actually innocent of second-degree murder.

---

[9] *Bolden* was decided on December 15, 2005, after petitioner's guilty plea and judgment of conviction.

-11-

In *Sharma*, the state supreme court held that "in order for a person to be held accountable for the specific intent crime of another under an aiding or abetting theory of principal liability, the aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime." 118 Nev. at 655, 56 P.3d at 872. A defendant therefore cannot be held liable for a specific intent crime of another under an aiding or abetting theory based upon the murder being the natural and probable consequence of the aider and abettor's target crime. *Id.*

Second-degree murder, however, is a general intent crime rather than a specific intent crime. *E.g., Hancock v. State*, 80 Nev. 581, 583, 397 P.2d 181, 182 (1964). *Sharma* therefore does not apply, and *Sharma* did not overrule the natural and probable consequences doctrine as applied to general intent crimes. *See Bolden*, 121 Nev. at 914, 124 P.3d at 195 (appellant's reliance on *Sharma* was misplaced because the crimes he was accused of aiding and abetting were not specific intent crimes), *overruled on other grounds by Cortinas v. State*, 124 Nev. 1013, 195 P.3d 315 (2008); *Turner v. State*, 2017 WL 698523, No. 69444, at *3 (Nev., Feb. 16, 2017)(unpublished disposition)(the district court properly gave a "natural and probable consequences" aiding and abetting instruction in relation to second-degree murder because *Sharma* is inapplicable to general intent crimes)

In this regard, it does not matter that White's codefendant Walker was convicted instead of first-degree murder. The state supreme court specifically stated in *Sharma* that "an accomplice can be convicted of a lesser related crime if he did not harbor the specific intent required to be convicted of his cohort's crime." 118 Nev. 648, 56 P.3d 868, 871 n. 8 (2002). White therefore could be convicted of aiding and abetting second-degree murder even where Walker was convicted of first-degree murder. *See, e.g., McCurdy v. Attorney General*, 2007 WL 1231526 (9th Cir., April 27, 2007).

*Bolden* further does not aid White with regard to coconspirator liability for substantially the same reason. The holding in *Bolden* requiring specific intent also by a defendant found vicariously liable as a coconspirator is directed to specific intent crimes, not general intent crimes. *Bolden*, which was decided after White's conviction, did "conclude that in future

prosecutions, vicarious coconspirator liability may be properly imposed for general intent crimes only when the crime in question was a 'reasonably foreseeable consequence' of the object of the conspiracy." 121 Nev. at 922-23, 124 P.3d at 200-01. Over and above the fact that White's conviction predated *Bolden*, it clearly was a reasonably foreseeable consequence of a conspiracy to rob a public business using a handgun that if someone resisted the robbers, they foreseeably might be shot and killed by the gun-wielding accomplice.[10]

Petitioner therefore cannot establish actual factual innocence of second-degree murder in the first instance based upon his arguments under *Sharma* and *Bolden*.

Moreover, the United States Supreme Court held in *Bousley* that "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." 523 U.S. at 624. As the Ninth Circuit has stated: "Otherwise, a petitioner could escape criminal liability because of a prosecutor's leniency in agreeing to conviction on less serious, but now invalid, counts in obtaining the plea." *Vosgien*, 742 F.3d at 1136.

Prior to his plea, on the charges and notices then on file, White faced possible conviction for first-degree murder with the use of a deadly weapon, for which he possibly could be sentenced to death. The state opted to forego further pursuit of the more serious pending charge of first-degree murder with the use of a deadly weapon, along with the potential death sentence, pursuant to the plea negotiations. (See text, *supra*, at 5.)[11]

White therefore must demonstrate actual innocence not only of second-degree murder but also of first-degree murder with the use of a deadly weapon, which was charged in the case also on a felony murder theory.

---

[10] White does not, and clearly could not, profess ignorance of the fact that Walker was going to display a handgun during the robbery. White and Walker robbed the other McDonald's restaurant using the same *modus operandi* with a handgun. Any claim by White of ignorance that Walker was going to use a handgun in the robbery further clearly would open the door to admission of evidence at a trial of the other multiple prior robberies where they followed the same basic *modus operandi* with Walker displaying a handgun to discourage resistance.

[11] Counsel noted during the colloquy: "They are dropping both the use of the deadly weapon, as well as dropping it from a first to a second based upon the negotiations." (ECF No. 14-20, at 8; Exhibit 20, at 26.)

-13-

White cannot demonstrate actual innocence of first-degree murder because on the record presented a reasonable juror could find him guilty beyond a reasonable doubt of first-degree murder under the felony murder rule under Nevada state law.[12]

Under Nevada state law, the felony murder rule subjects all participants in a crime to criminal liability for any murder committed during the chain of events that constitutes an enumerated crime, such as robbery. *See, e.g., Echavarria v. State*, 108 Nev. 734, 748, 839 P.2d 589, 599 (1992). The crime of robbery includes acts taken to facilitate the perpetrators' escape, and the crime of robbery is not complete until the perpetrators have escaped with their ill-gotten gains. *Echavarria*, 108 Nev. at 748, 839 P.2d at 599; *Payne v. State*, 81 Nev. 503, 507, 406 P.2d 922, 925 (1965). As the state supreme court elaborated in a prior case:

> Robbery, unlike burglary, is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time.
>
> . . . . .
>
> The "perpetration" of the crime of robbery is not completed the moment the stolen property is in the possession of the robber. . . . .
>
> The escape of the robber with his ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property. . . . .

*State v. Fouquette*, 67 Nev. 505, 527-28, 221 P.2d 404, 416 (1950). The determination of when the chain of events constituting a crime is completed is a question for the jury, and it turns upon the facts and circumstances of each case. *Payne*, 81 Nev. at 507 & 508, 406 P.2d at 924 & 925.

A reasonable juror could find White guilty beyond a reasonable doubt of first-degree murder under Nevada's felony murder rule on the basis that Walker murdered Latimer to facilitate his accomplice White's escape with the proceeds of the robbery. Latimer began chasing White while White still was inside the restaurant, caught up with White only a few feet

---

[12] A murder committed in the perpetration or attempted perpetration of a robbery or burglary is a first-degree murder under N.R.S. 200.030(1)(b), rather than a second-degree murder, as a matter of law. *E.g., Perez v. v. State,* 2017 WL 2813044, No. 69188, at *2 (Nev., June 27, 2017)(unpublished disposition).

-14-

outside the door while they both still were on the premises in the McDonald's parking lot, and physically attempted to keep White from getting away with the stolen money. Walker's murder of Latimer prevented Latimer from taking any further action to stop White from making his escape. Immediately after Walker shot Latimer, White got into the getaway car and the two robbers finally accomplished their escape. While Walker previously had reached the getaway car and had gotten into the car prior to the murder, White had not. A reasonable juror readily could infer from the facts presented that Walker killed Latimer to effect White's then-still-uncompleted escape with the robbery proceeds. (See text, *supra*, at 4-5.)

Prior to his plea, White contended both in the justice court and the state district court that he could not be found culpable under the felony murder rule on these facts. White in particular relied upon a New York state court decision in *People v. Marwig*, 227 N.Y. 382, 125 N.E. 535 (1919), that was discussed in the *Payne* decision by the Supreme Court of Nevada. (*See* ECF No. 14-9, at 109-112; Exhibit 9, at 108-11. ECF No. 14-11, at 12-13 & 14-15; Exhibit 11, at 11-12 & 13-14.)

*Marwig* does not establish that White was actually factually innocent of first-degree murder under the felony murder rule under Nevada state law. In *Payne*, the Supreme Court of Nevada noted at the very outset that *Marwig* "laid down a more restricted and limited rule to govern felony-murder" than the rule that was applicable in Nevada. The *Payne* court further distinguished *Marwig* on its facts:

> In *People v. Marwig, supra*, there was a clear break in the "chain of events" so that the robbery and killing were not part of one continuous transaction. The robbery took place within a jewelry store, the participants left, and the attempted apprehension by the store owner took place outside the building and up the block. That is not true in our case where there was one continuous struggle inside the building and out onto the sidewalk where the killing took place. The *Marwig* case is clearly not applicable to our factual situation.

*Payne*, 81 Nev. at 508, 406 P.2d at 925.[13]

---

[13]In *Marwig*, the jewelry store owner himself had left the robbery scene during or prior to the robbery by running into an adjoining store through a side door. After the robbers had left the jewelry store and were
(continued...)

-15-

In contrast to *Marwig*, White was not first accosted by an individual instead "up the block" after all of the participants – both pursuer and robbers – already had left the business premises. Rather, Latimer started pursuing White while both still were inside the restaurant and Latimer caught up with and physically engaged White only feet outside the door while all concerned still were on the business premises in the restaurant's parking lot. They were by the handicapped parking spot right outside the entrance to the restaurant, where the getaway car was waiting for White. Over and above the fact that *Marwig* applied a "more restricted and limited rule" than applies in Nevada, *Marwig* thus is distinguishable in substance from the facts presented in White's case. Application of the felony murder rule to the facts in White's case is fully consonant with prior Nevada cases upholding convictions under the rule.[14]

---

[13](...continued)
proceeding along the sidewalk past the adjoining store, the jewelry store owner then ran out onto the sidewalk and engaged one of the robbers. The owner was shot and killed during the ensuing struggle. 227 N.Y. at 384-85, 125 N.E. at 536.

In *Payne*, the victim and his wife were in a Western Union office in Las Vegas preparing to send money when the defendant grabbed the money from the wife. She grabbed it back and a struggle ensued between the defendant and the husband and wife. The struggle "started inside the Western Union Office but continued out the door and in front of the building." The defendant stabbed and killed the husband "[a]t some point during this struggle," and he later was apprehended with a piece of a $100 bill stolen from the wife. 81 Nev. at 505, 406 P.2d at 923-24.

[14]In *Fouquette*, the state supreme court stated either as an alternative holding or as quite extensively-reasoned *dicta* that the defendant could be found guilty under the felony murder rule even if he murdered the victim thirty minutes after securing possession of the robbery proceeds at a service station, where he took the attendant with the money bag in a vehicle to another location. *See* 67 Nev. at 526-30, 221 P.2d at 415-17. *See also Archibalo v. State*, 77 Nev. 301, 303 & 304-05, 362 P.2d 721, 721 & 722 (1961)(relying upon *Fouquette,* the state supreme court held that a murder of a service station attendant who was robbed in California and then abducted to and later killed in Nevada was committed in perpetration of the robbery for purposes of the felony murder rule). Kidnapping did not become an enumerated felony for first-degree murder under the Nevada murder statute until 1973. *Compare* N.R.S. 200.030, as amended through 1967 Laws, c. 523, § 438, at p. 1470, *with* N.R.S. 200.030, as amended by 1973 Laws., c. 798, § 5, at pp. 1803-04. The state supreme court's analysis in both *Fouquette* and *Archibalo* therefore necessarily was based upon robbery being the enumerated felony for purposes of the felony murder rule, and that in fact was the rationale applied by the court in both cases.

In *State v. Williams*, 28 Nev. 395, 82 P. 353 (1905), the state supreme court rejected a contention that the evidence was insufficient under the felony murder rule "because the shooting was not done until about two minutes after the robbery." The court rejected the argument because, *inter alia*, the shooting "occurred as part of a continuous assault, lasting from the robbery to the shooting, and apparently was done for the purpose of preventing detection." 28 Nev. at 407, 82 P. at 353. Notably, later Nevada decisions
(continued...)

-16-

Petitioner therefore cannot establish that no reasonable juror would have found him guilty beyond a reasonable doubt of first-degree murder pursuant to the felony murder rule under Nevada state law.

White therefore cannot establish actual factual innocence to overcome the untimeliness of his petition, including as to his claims challenging his conviction for second-degree murder. He cannot establish actual innocence of second-degree murder in the first instance. Nor can he establish actual innocence of the more serious capital first-degree murder charge that was foregone by the state pursuant to the plea negotiations.

The petition therefore will be dismissed with prejudice as untimely.[15]

---

[14](...continued)
describe *Williams* as involving a shooting that occurred two miles away from the location of the robbery as well as two minutes after the robbery. *See Payne*, 81 Nev. at 507, 406 P.2d at 925; *Fouquette*, 67 Nev. at 528, 221 P.2d at 416. The *Williams* opinion does not refer to the murder occurring two miles distance away as well as two minutes after the robbery. *See also* 28 Nev. at 396 & 399-400 (parties' factual argument). That point notwithstanding, however, the later descriptions of *Williams* in *Payne* and *Fouquette* further reflect the state supreme court's understanding of Nevada's felony murder rule as not inexorably requiring that the murder necessarily be committed at the robbery situs or specifically during the taking of the money itself for the felony murder rule to apply.

No at least published decision of the Supreme Court of Nevada discusses the felony murder rule applicable in other jurisdictions pursuant to which a felony is not completed until the defendant has reached a "safe haven" or "temporary place of safety." The court notes that if such an articulation of a felony murder rule instead were applied in the present case, White had not yet reached a temporary place of safety – inside the getaway car – when Walker shot Latimer so that White then could do so. White instead was pursued continuously by Latimer from the point in time that White turned to leave the counter inside the restaurant with the robbery proceeds until the point that Walker shot Latimer, thereafter leaving no potential impediment to White then getting into the getaway car and finally reaching a temporary place of safety. White clearly was not in a place of safety prior to that point.

The justice court and state district court both rejected petitioner's arguments as to the felony murder rule that relied upon *Marwig*. (*See, e.g.,* ECF No. 14-9, at 116; Exhibit 9, at 115. ECF No. 14-16; Exhibit 16.) The state supreme court further held, in rejecting an untimely state post-conviction petition in No. 57220 in that court, specifically that White had not established "that he is actually innocent of all charges, including those forgone by the State as part of the plea agreement." *White v. State*, 2011 WL 5845061 (Nev., Nov. 18, 2011). With respect to the implicit application of Nevada's felony murder rule therein, the state supreme court is the final arbiter of Nevada state law.

[15]The court further notes that petitioner did not sign his show-cause response, and he did not present the factual assertions within that response via a declaration under penalty of perjury. The signature of a certificate of service and of a state law affirmation regarding inclusion of social security numbers constituted neither a signature of the show-cause response itself nor a declaration under penalty of perjury as to the facts asserted within the response itself. (*See* ECF No. 8, at 20-21.) The show-cause order informed petitioner
(continued...)

IT THEREFORE IS ORDERED that the petition shall be DISMISSED with prejudice as untimely.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED. Jurists of reason would not find it debatable as to whether the district court is correct in its procedural ruling dismissing the petition as untimely. The petition is untimely by over nine years. (See text, *supra*, at 6-8.) Petitioner's reliance upon his ignorance of the law and the prison's use of a paging system for legal resource access fails to establish a viable basis for either equitable tolling or delayed accrual over that nine year period. (See text, *supra*, at 8-10 & 17 n.15.) With regard to petitioner's claim of actual innocence of second-degree murder, that claim of innocence cannot overcome the untimeliness of the federal petition to the extent that petitioner seeks to challenge his conviction for the other offenses in his two state cases. (See text, *supra*, at 11.) Petitioner further has not established actual innocence of the second-degree murder charge itself because the state cases upon which he relies pertain to specific intent crimes and second-degree murder instead is a general intent crime under Nevada law.

---

[15](...continued)
that factual assertions unsupported by any competent evidence would be disregarded. (ECF No. 5, at 6.) In all events, the conclusory factual assertions in the show-cause response do not provide a viable factual basis for overcoming the untimeliness of the federal petition, as to either equitable tolling, delayed accrual and/or actual innocence. Petitioner's factual assertions in particular with regard to tolling and delayed accrual further are vague as to specifics and timing. A nonspecific showing by a party with the burden of proof – such as with regard to equitable tolling – is insufficient. *E.g., Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002).

The court further has assumed *arguendo* that the affidavit by petitioner's codefendant Charles Walker submitted with the petition (ECF No. 6, at 42) and/or his unsworn post-plea statements at sentencing (ECF No. 14-24, at 7; Exhibit 24, at 18-19) would constitute "new evidence" for purposes of the actual innocence gateway. Walker's assertions do not establish petitioner's innocence of either first-degree murder or second-degree murder, for the reasons discussed in the text.

Finally, petitioner relies upon *Bolden* for the proposition that reversal of a general verdict supported by multiple alternate theories is required when any one of the alternate theories is legally erroneous. *See* 121 Nev. at 913, 124 P.3d at 194-95. Petitioner was not convicted pursuant to a general verdict, however. He instead entered a plea, and he now must show actual factual innocence to overcome the untimeliness of his federal petition. To do that, he must show actual factual innocence of both second-degree murder and first-degree murder with the use of a deadly weapon, not merely legal insufficiency of one or more alternate legal theories supporting either charge. In all events, however, White has not shown that any of the legal theories that support his conviction for second-degree murder were legally erroneous under Nevada law. Nor has he shown that he could not have been convicted of first-degree murder with the use of a deadly weapon under the felony murder rule.

-18-

(See text, *supra*, at 10-13.) Petitioner further in any event also must establish actual innocence of the capital charge of first-degree murder with a deadly weapon that was foregone by the state pursuant to the plea negotiations. (See text, *supra*, at 13.) Petitioner is unable to do so because he cannot establish that no reasonable juror would have found him guilty beyond a reasonable doubt of first-degree murder under the felony murder rule as it is applied under Nevada law. (See text, *supra*, at 2-5, 14-17 & n.15.)

The clerk of court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED: September 7, 2018.

_____
JAMES C. MAHAN
United States District Judge